**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH BRADLEY and JEANETTE WALLACE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 25 C 5573 |
| CAPITAL ONE AUTO FINANCE, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Keith Bradley and Jeannette Wallace have sued Capital One Auto Finance, a division of Capitol One, N.A., under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b); the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801; the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. Ann. 505/2; and the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5531. Capital One moved to dismiss the claims and relied on material outside the complaint. The Court converted that motion into a motion for summary judgment. For the reasons stated below, the Court grants Capital One's motion for summary judgement.

**Background**

Keith Sean Bradley and Jeanette Wallace sought to obtain a loan to purchase a home. They contend that inaccurate credit reporting related to a joint auto loan from Capital One Auto Finance led creditors to deny their applications or resulted in offers

with high interest rates.[1]  The inaccuracies concern the last payment date on the auto

loan.  Equifax reported the last payment date as January 1, 2020; TransUnion and

Experian listed the last payment date as January 31, 2020.  *See* Am. Compl., Ex. A.

The pay status of the account is "charged off," meaning that Capitol One does not

expect that it will be able to collect on the debt.  *See id.*

In May 2024, Bradley and Wallace each sent letters to the three credit reporting

agencies (CRAs) noting the discrepancy in last payment dates and requesting that the

information be corrected or deleted.  *See* Am. Compl., Ex. A.  The plaintiffs contend

that, according to the CRAs, Capital One had confirmed the accuracy of the dates in

each report even though the reports showed conflicting dates.

The plaintiffs disputed the last payment dates on their loan with Capital One.  A

representative of Capitol One allegedly told the plaintiffs that, contrary to the account

information the plaintiffs saw on their credit reports, the account had not been written

off.  The plaintiffs requested that the account be removed.  Capitol One refused.  The

plaintiffs also stated that the status of their account as charged off or written off required

issuance of an Internal Revenue Service (IRS) Form 1099-C.

In January 2025, Bradley submitted a complaint to the Consumer Financial

Protection Bureau (CFPB) demanding that Capital One cease and desist from reporting

---

[1] Bradley is named as the singular "plaintiff" in the caption of the amended complaint, but the same document states that "Keith Sean Bradley & Jeanette Wallace hereby files [sic] this claim against the named defendant[.]"  Am. Compl. at 1.  Capital One treats both parties as plaintiffs.  The plaintiffs' response to Capital One's latest motion lists both Bradley and Wallace in the caption.  The loan at issue in this case is a joint auto loan affecting the credit reports of both Bradley and Wallace.  The Court accordingly understands that the pro se plaintiffs wish to proceed jointly and that Capital One does not object.  *See generally Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that pleadings of pro se plaintiffs are to be liberally construed).

information related to the contested debt to any CRA and from any further, non-legally required communication with him. *See* Am. Compl., Ex. B. The complaint was sent to Capital One. *Id.* In response, in March 2025, Capitol One disclosed to Bradley information regarding a Keith L. Bradley of Allen, Texas, including his motor vehicle installment sales contract and other information about his debt and payment history. *Id.*

In March 2025, Bradley filed a lawsuit in the Circuit Court of Cook County seeking $400,000 from Capital One based on violations of the FCRA. Capital One removed the case to federal court. An amended complaint was later filed with leave by the Court.

In October 2025, Bradley also filed a police report regarding identity theft. *Id.*, Ex. D. Bradley had been notified that he was denied a loan by OneMain Financial, but he had never applied for this loan. *Id.*, Ex. C. He had applied for a loan from the same lender about six months earlier.

The amended complaint alleges that Capitol One was negligently noncompliant under 15 U.S.C. § 1681s-2(b) as it failed to conduct a reasonable investigation into the dispute and correct inaccurate information; was willfully noncompliant in violation of 15 U.S.C. § 1681s-2(b) by verifying inconsistent payment dates on the auto loan and disclosing a third party's information; violated the GLBA and the ICFA through disclosure of nonpublic personal information of a third party; and violated the CFPA through unfair, deceptive, or abusive practices. Bradley requests statutory and punitive damages as well as injunctive relief.

In December 2025, Capitol One moved to dismiss for failure to state a claim. The Court proposed to convert the motion to a motion for summary judgment because it

3

relied on material outside the complaint. Capitol One did not object. Dkt. 38. The motion was converted.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if, after drawing all reasonable inferences from the record in favor of the nonmoving party, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine dispute regarding a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

The plaintiffs bring two claims under 15 U.S.C. § 1681s-2(b), which establishes the duties of information furnishers upon notice of a dispute with a CRA. After a CRA notifies an information furnisher of a dispute,

> the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information.

4

*Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Id.*

Section 1681s-2(b) has two threshold requirements: "a prima facie showing that the data furnisher provided incomplete or inaccurate information" and "the incompleteness or inaccuracy was the product of an unreasonable investigation[.]" *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023).

Capital One contends that there is no genuine factual dispute regarding Bradley and Wallace's section 1681s-2(b) claims because automated consumer dispute verification (ACDV) forms reflect that Capital One investigated the disputed information and provided accurate information to each CRA. When notified of a dispute, a CRA transmits an ACDV form to an information furnisher like Capital One. *Id.* at 773. "The ACDV form presents the furnisher with account payment data the credit reporting agency currently possesses and the relevant data items the consumer disputes." *Id.* The furnisher must investigate and "also correct or verify the information by returning the ACDV form to the credit reporting agency with any amended or verified data inserted next to the old data." *Id.*

The ACDV forms reflect that, for both Bradley and Wallace, TransUnion and Experian reported the last payment date on the account as January 31, 2020, which Capital One confirmed. *See* Mem. in. Supp. of Mot. for Summ. J. at 5–6. Bradley's Equifax ACDV form showed a last payment date of January 1, 2020, and Capital One

5

responded by stating the accurate date was January 31, 2020. *See id.*, Ex. 5.[2]

Although the record does not reveal the steps Capital One took to conclude that

January 31, 2020 was the correct last payment date, Capital One evidently came to this

conclusion, confirmed the correct date for the two CRAs that were accurately reporting

the information, and corrected the date with Equifax. The plaintiffs do not suggest that

the January 31, 2020 payment date was inaccurate. In short, Capital One did what the

FCRA requires and reported accurate information to the CRAs.

The plaintiffs object to the ACDV forms on several grounds. First, they assert

that the forms are inadmissible because they are not authenticated by an affidavit, and

in adjudicating a motion for summary judgment, the Court may only reference evidence

that would be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.

2000) ("Normally . . . at the summary judgment stage, the party seeking to offer the

business record must attach an affidavit sworn to by a person who would be qualified to

introduce the record as evidence at trial, for example, a custodian or anyone qualified to

speak from personal knowledge that the documents were admissible business

records."). It is true that the forms were originally submitted without an affidavit to

establish a foundation. But this occurred because the forms were exhibits to Capital

One's motion to dismiss, where no such requirement applies. After the conversion of

the motion to dismiss to a motion for summary judgment, Capital One provided an

affidavit from an employee with personal knowledge that authenticates the records and

lays an appropriate foundation. *See* Def.'s Reply, Ex. 1 (affidavit of Brandy Clark).

---

[2] The record does not contain an ACDV form for Wallace from Equifax, and the plaintiffs do not raise any concerns about its absence.

The plaintiffs also object to the fact that the ACDV forms provided by Capital One redact certain information in fields labeled "ACCOUNT NUMBER", "DISPUTE RECORD ID", "Date of birth", "SSN", "Street address", and "Zip[.]" *Id.*, Exs. 2–5. The ACDV forms additionally contain some redactions near the margins at the top and bottom of each page that do not correspond to a labeled field. Perhaps based on these redactions, the plaintiffs contend that the ACDV forms filed with the Court are partial documents and that Capital One did not provide its internal notes or the "Associated Images" that the plaintiffs submitted to the CRAs.

Courts generally favor complete evidence, *see* Fed. R. Evid. 106, but portions of a document "that are neither explanatory of nor relevant to the admitted passages" need not be admitted. *United States v. Lewis,* 641 F.3d 773, 785 (7th Cir. 2011) (quoting *United States v. Marin,* 669 F.2d 73, 84 (2d Cir. 1982)). Clark's affidavit explains that the "Exhibits contain the ACDV portion of the larger document, which also includes Capital One's internal notes of its investigation of the disputes." *Id.*, Ex. 1 ¶ 5. Capital One's reply brief also explains that it did not submit its "internal investigatory notes and audit trail." Def.'s Reply at 2, n.1. It contends that these "notes explaining how Capital One reached its conclusion are not relevant to any issue before the Court." *Id.*

The Court agrees that Capital One's internal notes could not possibly create a genuine dispute of material fact in light of the contents of the ACDV forms. One of the two prima facie requirements for a section 1681s-2b claim is "that the data furnisher provided incomplete or inaccurate information." *Frazier*, 72 F.4th at 775. It is evident that Capital One complied with the FCRA by taking some steps to investigate the

dispute, confirming the correct information with two CRAs, and correcting the error of the third CRA. There is no genuine dispute that Capital One provided incomplete or inaccurate information. Capital One's internal notes might reveal more about its process but would not contradict these facts. True, "[t]he meaning of quoted phrases often depends critically on unquoted context," *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003), but the ACDV forms stand on their own and are not likely to be misleading in the way a partial excerpt of a letter or contract might be. Nor does the FCRA prohibit automation, so the plaintiffs' contention that the full notes might reveal whether a human being reviewed their dispute is immaterial. Additionally, although Capital One later provided inaccurate information by sending records of a different Keith Bradley, those records were not part of the plaintiffs' dispute with the CRAs, so they cannot form the basis of an FCRA claim.

The plaintiffs' section 1681s-2(b) claims also stem from a dispute over whether their account was placed in "charge off" or "write off" status, which occurs when a creditor is not actively pursuing a debt. The plaintiffs explain that they contacted Capital One regarding their account status, but nowhere in their complaint or their filings on the motion for summary judgment do they state that they or Capital One notified a CRA about this issue. Notification of a CRA is a prerequisite to bringing a section 1681s-2(b) claim. *See Westra*, 409 F.3d at 827; *Smith v. ServiceMac, LLC*, No. 25 C 3540, 2025 WL 3280841, at *3 (N.D. Ill. Nov. 25, 2025) (Kennelly, J.). Without this, the plaintiffs simply have no basis for a section 1681s-2(b) claim premised upon a purported dispute stemming from the status of their account as written off.

Additionally, the plaintiffs' complaint fundamentally misunderstands the meaning

of a "charge off" or "write off" by contending that this status required Capital One to issue them an IRS Form 1099-C (Cancellation of Debt). A charge off or write off does not amount to forgiveness of the debt. Rather, a "charge off" is when a bank "treat[s] (an account receivable) as a loss or expense because payment is unlikely[.]" Charge Off, Black's Law Dictionary (12th ed. 2024); Write Off, Black's Law Dictionary (12th ed. 2024) ("To transfer the entire balance (of an asset account) to an expense or loss account to reflect the asset's total loss of value[.]"); see *United States v. S. Holland Tr. & Sav. Bank*, No. 93 C 2653, 1994 WL 695572, at *2 (N.D. Ill. Dec. 9, 1994) (quoting the affidavit of a bank vice president who explained that a charge off or write off is a "procedure by which a bank removes the total, or a portion of, the amount due under a loan from the asset portion of its balance sheet. . . . [which] does not constitute a forgiveness of debt and in no way affects a bank's right to enforce a debt obligation or a borrower's obligation to pay a debt"); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1208, 1210 (D. Colo. 2008) (describing a charge off as "a ledger book reclassification" and citing cases differentiating discharged debt from charged off debt).

By contrast, an IRS Form 1099-C must be issued when a debt over $600 is discharged, or in other words, cancelled or forgiven, not merely removed from a bank's balance sheet. "When a bank forgives a debt, it must send both the Internal Revenue Service and the debtor an IRS Form 1099 reporting the cancelled debt." *PNC Bank, Nat'l Ass'n v. Boytor*, 109 F.4th 495, 502 n.5 (7th Cir. 2024); see 26 U.S.C. § 6050P (governing Form 1099-C). The plaintiffs are just plain wrong in contending that a charged off debt, which has not been discharged or forgiven, requires issuance of Form 1099-C. To the extent the plaintiffs' claims are based on Capital One's failure to issue a

9

Form 1099-C, the claims lack merit.

The plaintiffs also assert claims under the GLBA and the CFPA, but these statutes do not provide a private right of action allowing individuals to sue for relief. Many courts in this district have concluded that the GLBA does not provide a private right of action. *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) (holding that the GBLA and its regulations do not provide a private right of action); *Butler v. CitiMortgage, Inc.*, No. 17 C 05168, 2017 WL 3620744, at *4 (N.D. Ill. Aug. 23, 2017) (collecting cases in this district holding that the GLBA lacks a private right of action). Nor does the CFPA, which grants the CFPB the authority to prohibit unfair, deceptive, or abusive acts. *See* 12 U.S.C. § 5531; *Rader v. Ally Fin., Inc.*, No. 24-2546, 2025 WL 274460, at *3 (7th Cir. Jan. 23, 2025) (stating that district court correctly concluded that no private right of action existed under 12 U.S.C. §§ 5481–5603, which includes the CFPA at 12 U.S.C. § 5531), *reh'g denied*, No. 24-2546, 2025 WL 1031100 (7th Cir. Apr. 7, 2025).[3] The plaintiffs therefore have not demonstrated a genuine dispute on these claims.

Finally, the plaintiffs assert a claim under the ICFA based on the fact that Capital One gave Bradley the records of another Keith Bradley from Allen, Texas in response to his CFPB cease and desist letter. Bradley and Wallace have no standing to assert a claim based on any privacy violation suffered by the other Keith Bradley. "[I]n general,

---

[3] This Court previously held that the CFPA does not afford a private right of action, albeit with a typographical error, for which it apologizes: "the CFPA does [*not*] provide for a private right of action. Rather, it contemplates enforcement by the Consumer Financial Protection Bureau. *See* 15 U.S.C. § 5564(a)." *Adam Travel Servs., Inc. v. Wells Fargo Bank, N.A.*, No. 21 C 5216, 2022 WL 1104550, at *5 (N.D. Ill. Apr. 13, 2022) (Kennelly, J.) (dismissing claim under 12 U.S.C. §§ 5531 and 5536).

the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012).

The ICFA claim also references Bradley's "psychological distress and fear of identity theft arising from the Defendant's clear inability to safeguard personal data." Am. Compl., Count III. Bradley filed a police report concerning identity theft. He received notification that a loan application that he had not submitted to a certain lender had been denied, although Bradley had applied for a loan from that lender six months earlier. Setting aside the fact that Bradley does not point to any incident in which Capital One may have released his data to a third party, the plaintiffs do not respond to Capital One's arguments regarding the ICFA claim. The plaintiffs have therefore forfeited or waived any argument regarding standing to bring an ICFA claim related to identity theft. *See United States v. Kopp*, 922 F.3d 337, 341 (7th Cir. 2019).

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [dkt. 35]. The Court directs the clerk to enter judgment stating: Judgment is entered in favor of defendant Capital One Auto Finance and against plaintiffs Keith Bradley and Jeannette Wallace.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 20, 2026

11